IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

_____FILED _____ENTERED
_____LODGED_____RECEIVED

APR 3 0 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

EKAETTE TOM AKWA                         *

    Appellant,                           *

v.                                       *     **Case No.: GJH-14-2703**
                                               **Bank. Case Nos: PM 13-30265 &**
RESIDENTIAL CREDIT SOLUTIONS,            *            **ADV PM 14-267**
INC.
                                         *
    Appellees.                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Appellant Ekaette Tom Akwa filed this appeal from the July 18, 2014 Order of the

United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"). *See* ECF

No. 1. The July 18, 2014 Order dismissed Akwa's adversary proceeding, which requested

bifurcation of Appellee Residential Credit Solutions, Inc.'s secured claim into secured and

unsecured components. *See* ECF No. 1-15. This Court has appellate jurisdiction pursuant to 28

U.S.C. § 158(a). Oral argument is unnecessary. *See* Fed. R. Bankr. P. 8012 & Loc. Rule 105.6.

For the reasons stated below, the Bankruptcy Court's Order will be AFFIRMED.

## I.  BACKGROUND

In December 2013, Appellant Akwa filed a voluntary petition for Chapter 13 bankruptcy.

*See* ECF No. 8 at 6. One of Akwa's named assets was her residence located at 3100 Memory

Lane in Silver Spring, Maryland. *See id.* at 7. Appellee Residential Credit Solutions, Inc.

("Residential") is the current holder of the Deed of Trust for this property. *See id.* Residential

filed a Proof of Claim for $476,535.97 on January 24, 2014 in connection with Akwa's Chapter

13 bankruptcy. *See id.* Akwa then filed a complaint, triggering an adversary proceeding, against

Residential. *See id.* Akwa's complaint requested that Residential's claim be bifurcated, or split,

into a secured claim representing the value of the property ($342,986.00) and an unsecured claim

representing the difference between the entire mortgage and the value of the property

($133,849.97). *See id.* On June 9, 2014, Residential filed a motion to dismiss the complaint,

asserting that 11 U.S.C. § 1322(b)(2) did not permit splitting the claim into secured and

unsecured portions. *See id.* at 8.

Akwa argued that certain provisions of the Deed of Trust[1] required collateral other than

the real property, which would have removed the claim from 11 U.S.C. §1322(b)(2)'s protection.

*See Id.* at 2–3.  Specifically, Akwa cited three provisions related to escrow funds (section three),

property insurance (section five), and miscellaneous proceeds (section eleven). The Bankruptcy

Court found that the provisions regarding escrow funds, insurance proceeds, and miscellaneous

proceeds were all inextricably bound to the real property itself. *See* ECF No. 1-15 at 3. The court

addressed each section cited by Akwa, stating:

> . . . Section 3 deals with escrow payments for taxes, ground rents,
> community association dues and insurance. Should the borrower
> fail to make the payments, the lender may make these on the
> borrower's behalf. Paragraph 5 contains the provisions requiring
> the maintenance of insurance; failing such, the lender could place
> insurance to protect its interest in the property. The provision also
> covers use of insurance proceeds in the event of loss. Finally,
> paragraph 11 of the Deed of Trust governs the use of proceeds paid
> by a third party, such as insurance proceeds or condemnation
> proceeds. Once again, no additional collateral is created, as such

---

[1] The Court considers the Deed of Trust when examining the complaint on a Rule 12(b)(6)
motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (".
. . courts must consider the complaint in its entirety, as well as other sources courts ordinarily
examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated
into the complaint by reference, and matters of which a court may take judicial notice.") (citation
omitted).

payments are in substitution of the original damaged or appropriated collateral.

*Id.* Additionally, the court noted that the U.S. Bankruptcy Code defines escrow funds and insurance proceeds as incidental property to a debtor's principal residence. *Id.* (citing 11 U.S.C §§ 101(13A)(A) & (27B)(B)). Thus, the court dismissed Akwa's complaint because Akwa's principal residence is real property and is the only security for Residential's claim. *See id.* at 2–4.

Akwa timely filed an appeal to this Court. *See* ECF No. 1.

## II.   STANDARD OF REVIEW

The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo. In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.,* 453 F.3d 225, 231 (4th Cir. 2006). A bankruptcy court's application of law to fact is reviewed for abuse of discretion. *Coggins & Harman, P.A. v. Rosen (In re Rood)*, No. DKC-12-1623, 2013 WL 55650, at *2 (D. Md. Jan. 2, 2013).

The Bankruptcy Court granted Residential's motion to dismiss Akwa's complaint under Fed. R. Civ. P. 12(b)(6). *See* ECF Nos. 1-6 & 1-16. Federal Rule of Civil Procedure 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "must be enough to raise a right to relief

Case 14-00267 Doc 29 Filed 04/30/15 Page 4 of 10

above the speculative level on the assumption that all of the complaint's allegations are true."

*Twombly*, 550 U.S. at 545.

## III.    DISCUSSION

Chapter 13 of the United States Bankruptcy Code permits a debtor to obtain a flexible repayment plan approved by a bankruptcy court. As part of the plan, 11 U.S.C. § 1322(b)(2) permits modification of secured claims.  11 U.S.C. § 506(a) explains when a secured claim can be bifurcated into secured and unsecured portions. Section 506(a) provides that "an allowed claim . . . secured by a lien . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Under this definition, to the extent a secured creditor's claim is worth more than the value of the property, the surplus is deemed to be unsecured for purposes of bankruptcy. *See Nobelman v. Am. Savings Bank*, 508 U.S. 324, 328 (1993). Section 506(a) is used in tandem with § 1322 to permit modification of a secured creditor's claim into secured and unsecured portions when the claim exceeds the value of the secured property. *Id.* Importantly, however, "a claim secured only by a security interest in real property that is the debtor's principal residence" cannot be bifurcated into secured and unsecured portions. *See* 11 U.S.C. § 1322(b)(2).  In *Nobelman*, 508 U.S. at 327–32, the Supreme Court confirmed that § 1322(b)(2) protects the entire claim from modification when the secured interest is in real property that is the debtor's principal residence. *See also In re Ennis*, 558 F.3d 343, 345–46 (4th Cir. 2009).

Here, the parties agree that 3100 Memory Lane is real property and Akwa's principal residence. Bank. ECF No. 1 & ECF No. 8 at 7. Akwa alleges, however, that the mortgage on her residence can still be modified through her Chapter 13 plan. Akwa maintains, as she did before the Bankruptcy Court, that the Deed of Trust required additional collateral—insurance proceeds,

4

escrow funds, and miscellaneous proceeds. *See* ECF No. 1-69 at ¶¶ 12–16. Thus, Akwa contends

that Residential's claim is not secured *only* by real property that is the debtor's principal

residence. *Id.* at ¶ 17. Conversely, Residential argues that the Deed of Trust creates a security

interest only in the debtor's home and no other collateral. *See* ECF No. 11 at 5–6.

The Bankruptcy Code defines a security interest as a "lien created by an agreement." 11

U.S.C. § 101(51). Additionally, a lien is defined as a "charge against or interest in property to

secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Code also

specifically recognizes items bound to a debtor's principal residence as "incidental property." A

debtor's principal residence is "a residential structure, including incidental property, without

regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A)(A).

Incidental property, with respect to a debtor's principal residence, is:

> (A) property commonly conveyed with a principal residence in the
> area where the real property is located;
> (B) all easements, rights, appurtenances, fixtures, rents, royalties,
> mineral rights, oil or gas rights or profits, water rights, escrow
> funds, or insurance proceeds; and
> (C) all replacements or additions.

11 U.S.C. § 101(27B)(B).

Consistent with 11 U.S.C. § 101, the Sixth Circuit has found that "[i]tems which are

inextricably bound to the real property itself as part of the possessory bundle of rights" do not

extend a lender's security interest beyond the real property. *In re Davis*, 989 F.2d 208, 213 (6th

Cir. 1993). In specifically discussing the requirement of insurance, the Sixth Circuit reasoned

that "hazard insurance is merely a contingent interest–an interest that is irrelevant until the

occurrence of some triggering event and not an additional security for the purposes of §

1322(b)(2)." *Id.* at 211 (citing *Matter of Washington*, 967 F.2d 171, 174–75 (5th Cir. 1992)).

Similarly, items such as "rents, royalties, profits, and fixtures" are incidental benefits of the real

property and not additional security. *See id.* at 212–13. This rationale also applies to escrow

funds and miscellaneous proceeds that are explicitly tied to the real property. Deeming these

items additional security for the purposes of § 1322(b)(2) would "completely eviscerate" the

anti-modification exception of § 1322(b)(2) because many deeds of trust which encumber

improved real property contain these provisions to protect the lender's investment in the real

property. *See id.* at 211 (quoting *in re Braylock*, 120 B.R. 61, 63 (Bankr. N.D. Miss. 1990)); *see*

*also In re Jackson*, 136 B.R. 797, 802 (Bankr. N.D. Ill. 1992) (". . . the boilerplate language

granting the mortgagee the right to receive and use property insurance proceeds in the event of

some destruction of the property does not create an additional type of collateral securing the

mortgage obligation"). Indeed, "[i]t would contravene the purpose of [§] 1322(b)(2) to find

*additional* security in the mere attempt to ensure protection of the primary security, the

[r]esidence [p]roperty." *In re Rosen*, 208 B.R. 345, 354 (Bankr. D.N.J. 1997) (emphasis in

original).[2]

Here, the Deed of Trust secures "the repayment of the Loan, and all renewals, extensions

and modifications of the Note; [] the performance of Borrower's covenants and agreements

under th[e] Security Instrument and the Note." ECF No. 18-1 at 3. The Deed of Trust specifies

that the borrower "grants and conveys . . . the following described property" and then notes the

address of Akwa's residence. *Id.* This language creates a security interest in the residence.

Stated another way, it creates a "charge against or interest in property to secure payment of a

debt or performance of an obligation." *See* 11 U.S.C. § 101(37). There is no similar language in

---

[2] In *Nobleman*, 508 U.S. 324, the parties did not appear to raise the issue of escrow funds or
insurance proceeds to the Supreme Court, however, it is worth noting that the Court found the
lender's claim to be secured only by a lien on the debtor's principal residence even though "[t]he
deed of trust also provided for a security interest in an undivided .67% interest in the common
areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents."
*Matter of Nobleman*, 968 F.2d 483, 484 n. 3 (5th Cir. 1992) *aff'd, Nobleman*, 508 U.S. 324.

Case 14-00267 Doc 29 Filed 04/30/15 Page 7 of 10

the document's discussion of escrow funds, insurance proceeds, or miscellaneous proceeds.

Indeed, the language contained in these provisions explicitly ties the funds to ensuring that the

lender's collateral—the real property—is preserved. *See* ECF No. 18-1 at 4–9. For example, the

lender may collect funds for escrow to ensure that all property-related payments, like taxes and

ground rents, are paid. *See id.* at 4. Likewise, the Deed of Trust also permits the lender to hold

insurance proceeds if an insurer pays for repairs to the house to ensure that the lender's

investment—the real property—is repaired to the lender's satisfaction. The same is true for

miscellaneous proceeds paid by a third party, which the lender can use for repairs or restoration.

*See id.* at 9.

This language is unambiguous and "construction of an unambiguous written agreement is

left to the court as a matter of law." *Fed. Leasing, Inc. v. Amperif Corp.*, 840 F.Supp. 1068, 1073

(D. Md. 1993) (citation omitted). Here, the provisions are not "separate or additional security

interest[s], but merely [] provision[s] to protect the lender's security interest in the real property."

*In re Keitzer*, 489 B.R. 698, 705–06 (Bankr. S.D. Ohio 2013). As the Bankruptcy Court stated,

"no additional collateral is created, as such payments are in substitution of the original damaged

or appropriated collateral." ECF No. 1-15 at 3. Thus, the Bankruptcy Court properly found, as a

matter of law, that the escrow funds, insurance proceeds, and miscellaneous proceeds[3] are

---

[3] The Court notes that miscellaneous proceeds are not explicitly included in the Bankruptcy
Code's definition of incidental property; however, they are similar to insurance proceeds and are
an incidental benefit that is part of the possessory bundle of rights to the real property itself. *See
In re Keitzer*, 489 B.R. 698, 705 (Bankr. S.D. Ohio 2013); *In re Givens*, 2010 WL 5092980 at *
4 (Bankr. D. Del. 2010) (". . . the types of interests assigned as Miscellaneous Proceeds are not
within the gambit of additional security interests that generally remove the anti-modification
protections . . . ").

incidental property that do not represent their own separate security interests.[4] *Cf. In re Inglis*, 481 B.R. 480, 484 (Bankr. S.D. Ind. 2012) ("The escrow here was established solely for the purpose of sequestering property taxes and insurance premiums. . . . The escrow account was no more than an enhancement that was a component part of the real property and was of little or no independent value."); *In re Mullins*, 2012 WL 2576625 at * 2 (Bankr. M.D.N.C. July 3, 2012) ("Nor is there any language in the escrow provisions found on pages five and six of the deed of trust purporting to create a security interest in escrow funds to be paid by the plaintiffs."); *In re Leiferman*, 2011 WL 166170 at *2 (D.S.D. Jan. 19, 2011) (". . . those covenants and agreements are not additional security . . . any sums [the Lender] might advance or disburse would be added to the amount secured *by* the mortgage . . . Debtors did not grant Wells Fargo a security interest in the miscellaneous proceeds. . . .") (emphasis in original); *In re Rosen*, 208 B.R. at 353–54 ("A review of the entire Funds Provision and the nature of the Funds contributions demonstrates that the Funds do not constitute additional security because they do not represent a property interest of the Debtor separate from the Residence Property.").

Akwa urges that the Bankruptcy Court should have looked to Maryland law to determine if the Deed of Trust created additional security interests in the escrow funds, insurance proceeds, and miscellaneous proceeds. However, state laws are suspended to the extent they conflict with the Bankruptcy Code. *See Butner v. United States*, 440 U.S. 48, 54 n. 9 (1979); *Tidewater Finance v. Kenney*, 531 F.3d 312, 318 (4th Cir. 2008). Here, the Bankruptcy Code defines

---

[4] Akwa focuses a large portion of her argument on whether insurance proceeds, escrow funds, and miscellaneous proceeds constitute real property. *See* ECF No. 8 at 12–18. Specifically, Akwa argues that "incidental property" to the debtor's principal residence is not real property. *Id.* Because the Deed of Trust is secured by real property, however, it is protected from modification by the exception in 11 U.S.C. § 1322(b)(2) unless it is also secured by other collateral, whether or not the additional property is real or personal. Thus, the relevant inquiry is whether these items are additional collateral. They are not.

"incidental property" to a debtor's principal residence. *See* 11 U.S.C. § 101(27)(B). As explained above, the Bankruptcy Court properly found that the provisions in the Deed of Trust were incidental property, and thus, were not additional security interests under the Bankruptcy Code.[5]

Akwa's complaint may have been on more solid ground if the Deed of Trust explicitly attempted to take a security interest in additional collateral. Some courts have found an additional security interest in escrow accounts when the loans explicitly state that the funds are additional security for the loan. *See In re Murray*, 2011 WL 6909638 at * 2 (E.D.N.C. May 31, 2011) (finding mortgagee's interest was not protected from modification under 11 U.S.C. § 1322(b)(2) because the loan provided that escrow funds were "pledged as additional security for all sums secured by this Security Instrument.") (internal quotation marks omitted); *In re Hughes*, 333 B.R. 360, 363 (Bankr. M.D.N.C. 2005) ("The GMAC loan documents do not simply provide for escrow payments for taxes and insurance and the establishment of an escrow account for such payments. Instead, the loan documents in the present case require the borrower to pledge the escrow funds as 'additional security' for the principal and interest due under the promissory note and deed of trust."); *In re Reed*, 247 B.R. 618 (Bankr. E.D. Pa. 2000) (finding mortgagee's interest was not protected from modification under 11 U.S.C. § 1322(b)(2) because the loan took

---

[5] Even if Maryland law did apply, the result may not be different. Under Maryland law, a security interest is defined as "an interest in personal property or fixtures that secures payment or performance of an obligation." Md. Code, Comm. Law Art. § 1-201(b)(35). To create a security interest under Maryland law, there must be language that leads to the conclusion that it was the intention of the parties to create a security interest. *See Tilghman Hardware, Inc. v. Larrimore*, 628 A.2d 215, 220–21 (Md. 1993). While Maryland courts have not addressed the issue in this case, Maryland's definition of a security interest is similar to the Bankruptcy Code's definition. Thus, even under Maryland law, strong reasons exist, as explained above, to find that the escrow funds, insurance proceeds, and miscellaneous proceeds ensure the preservation of the property and do not constitute independent interests securing payment of an obligation. Further, the Deed of Trust does not explicitly attempt to assert additional security interests in escrow funds, insurance proceeds, or miscellaneous proceeds.

9

an express security interest in escrow funds); *In re Jackson*, 136 B.R. at 802 (". . . [l]anguage which goes beyond the traditional right to use proceeds to pay off the obligation . . . may constitute the pledge of additional security.") (citations omitted); *But see In re Lunger*, 370 B.R. 649, 649–51 (Bankr. M.D. Pa. 2007) (finding interest was still protected from modification under 11 U.S.C. § 1322(b)(2) even where loan claimed to take security interest in escrow funds because Bankruptcy Code defined escrow funds as incidental property and escrow funds do not represent additional collateral). Here, the Deed of Trust does not contain language attempting to take additional security interests in the escrow funds, insurance proceeds, or miscellaneous proceeds. Thus, these cases do not support Akwa's claim.

## IV.   CONCLUSION

The Deed of Trust on Akwa's residence is secured only by real property that is also Akwa's principal residence. Thus, Akwa's complaint fails to state a claim for relief that is plausible on its face. The Bankruptcy Court's dismissal of the complaint is AFFIRMED.

A separate Order shall follow.

Dated: April 30, 2015

George J. Hazel
United States District Judge

10